Appellate, R.E. for the Appellate, Michael J. Wall, R.E. for the Appellate, both in black. Thank you, Mr. Wall. Thank you, Your Honor. May it please the Court, my name is Michael Wall, and I'm here to represent the Appellate, Home Depot, U.S.A. We are not here dealing with an ordinary foreclosure action, and we're not dealing with computerized or standardized mortgage documents. There are hundreds of pages of documents involved in this transaction, and they are very detailed. But certainly what we do know is that before the lender entered into this transaction and before it funded its loan, it knew of all the agreements between Home Depot and the developer of the shopping center, Cannonball. That's shown in the documents, and the lender's also constructively – that knowledge is also constructively imposed upon the lender because all of the Home Depot agreements were recorded before the lender's mortgage was recorded, and that was an intentional deliberate act, as shown by the exhibits. It was a letter that was sent to the title company specifying the order of recording, and everything was to be recorded before the lender's mortgage, putting Home Depot's agreements and rights in advance. Which is why the lender demanded priority of lien, correct? Yes, that was the reverse, but it was only the priority of the lien itself that was demanded and obtained. And that was a separate, very small term in the agreement, that the lien was subordinated, but none of the other rights that Home Depot had were subordinated. And that's shown by the extensive treatment of those other rights. Now, the trial court essentially held that Home Depot's reimbursement and SA lien rights were personal and didn't run with the land. So that's the first issue to attack is, obviously, for us to reverse, we would have to hold they run with the land and not personal. But then they also have a fallback position that, assuming that they did run with the land, they were terminated because they're inferior and subordinate to the bank's mortgage. Is that your argument about the recording sequence? Yes. Their argument is that, and maybe beside the issue of the covenant running with the land, is that because of that small clause in that one paragraph that said the lien was subordinate, then that gave them the right to foreclose and wipe out every right that we had. And why is their position not tenable? Pardon me? Why is their position not tenable? Because that's not what the document said. And if that is followed, then what happens is that all of the other terms in this agreement are rendered superfluous. I counted last night that in these documents, nine times the party specified that Home Depot's rights were supposed to run with the land. And be binding on the successors of signs and all that. Exactly. Standard language. Exactly. And in one instance, they even used the term when they were talking about the tax. It's an issue that is binding upon successors and title. Specifically used that terminology in 16E, although I believe it's the development agreement. So it was clear from those documents what the intentions were, that these were supposed to be treated differently than the lien itself. Remember that the lien is only a security, just like the bank's mortgage is only a security document. There's no transfer of title when there's a mortgage recorded. It's just a lien on the property. Well, the trial court didn't find that it wiped out every right. The trial court actually carved out this lien priority issue and said that any lien didn't run with the land. But everything else, the trial court granted Home Depot summary judgment on it, didn't it? Actually, it's almost in three parts now. When the bank first filed its complaint, it said in its pleadings that every single right that we had related to that shopping center, other than, you know, footnote it said what was in the Operation Easement Agreement, they weren't seeking to foreclose that, that they said every other right that we had was gone when they foreclosed. Then they backed off once I filed my cross motion for summary judgment and my counterclaim, count two of my counterclaim. They backed off and they said, okay, we're not trying to foreclose every right that you have. We are trying to foreclose all of your rights only as to this special service area tax. So that's what happened is that then the court ruled, well, all my other rights in the shopping center to my easements and what I can say about a sign, what I can say about another building being built on an outlot, those rights were reserved to me. But then it carved out and said, as requested by the bank, two things, not only is my lien lost, but all of my contract rights against any successor, any successor entitled, any grantee, any subsequent owner to recover those SSA taxes is lost also. So I lost two things. I reserved my rights to say I've still got an easement and they've got to pay, we've got to share the expenses for snow plowing, things like that. But the critical thing is, and what's the valuable thing here, is that I lost every right I had, not just my lien right, as to recover those SSA taxes, which are quite valuable. And did the trial court say that your continuing rights run against the developer, the seller of the property, in perpetuity? Or, in other words, let me give you a perspective. You have a timeline and you have a deed and you have this agreement. And apparently what the court did was it said from day one until the foreclosure and possibly the transfer of the deed, you have a cause of action and contract against the developer. Right. But after the deed passes, did it say that you still have a cause of action against the developer, even though he's no longer around? Or were your rights terminated completely and you have no recourse against anybody? Well, they didn't rule either way. But I believe they would have ruled, that the trial court would have ruled, that my rights continued against the developer alone, if that answers your question. The reason why the court didn't rule upon that is that one of my counterclaims was a contract action against the developer. I dismissed that voluntarily at the end so I could move on with the appeal. Because you're right, Justice McClaren, the developer's not around and he has no money, which is why it's in foreclosure. But my contract rights, yes. And I don't think the bank would dispute my contract rights against that developer. I could sue him tomorrow and get a judgment and hang it on the wall. Well, something else. If the trial court was correct in its ruling that it didn't run with the land, then if this hadn't gone into foreclosure and the bank had never been involved and the developer had sold to a third party, there is no question that my rights would have continued against that third party. Why? If it doesn't run with the land? No. Well, our position is that it does run with the land. Well, didn't the trial court say it didn't run with the land? Yes. Well, if it doesn't run with the land, then doesn't that mean that even though it sold to a third party, your rights are extinguished according to the trial? I'm only attempting to logically apply the rationale or the legal determinations of the trial court across the board. I don't want to say I'm reducio ad absurdum. I'm not trying to take this to absurdity. I'm just trying to follow the logic of it and see where it would take under slightly different circumstances. You're right. Given the court's ruling that this did not run with the land, and by implication the court said it doesn't affect the value of the land, it doesn't affect the use of the land, it doesn't affect the enjoyment of the land, it doesn't touch and concern the land or any of those things, then under the court's ruling, yes, I would have no rights against someone who the developer sold the property to. I would have been out in that circumstance also. You would agree that Bank of America stands in the shoes of LaSalle, the original lender, correct? Yes, there's no question about that. Let me ask you this, though. You've indicated that according to this trial court's ruling, you've lost your lien rights against the lender and you've lost your lien rights against any subsequent title holder. Yes, sir. Okay. Now, didn't you already lose your lien rights against the lender based upon the agreement that Home Depot entered into with LaSalle? All I did was agree to subordinate my lien rights. Wasn't there a provision in that agreement, according to the counsel's brief, that the lender did not have any duty under the agreement to take on any of the duties of the developer or the anchor tenants? Right. In one of the agreements, that language was in there. I think I distinguished that in my reply brief, though, as to why I don't think that applies to this situation. Why doesn't it apply to this situation? I believe there was language in the – well, first of all, I think that related to a situation where the developer – I mean, the lender outside of the foreclosure would become liable for some obligation that the developer had. But I don't think it applied here, Judge. I'd have to check back in the reply brief. Again, the documents are quite extensive. Okay. Well, was there a – was there actually a lien ever entered on – you know, before the foreclosure, before the foreclosure sale? Was there ever a lien entered on the property for the payment of any of these taxes from the past? Yes, sir. I filed a lien for Home Depot against the property before – not before the action was filed, but while the action was pending. But before the lender took title to the property? Yes, sir. Wouldn't you agree that that lien would be extinguished? Yes, sir. Well – I mean, you have a – you have a foreclosure with a deficiency judgment of $34 million. I mean, how does your lien survive that? No, I agree under the courts' rulings, and that's lost. Okay, so that's lost. So now we're moving forward with this issue, and we have – you know, I think it's kind of a divergent path here. We have against the lender and then against subsequent title holders. Should the lender – because the lender was the purchaser. I don't know if the lender still owns this property. Yes, sir. But the lender was the purchaser, and then the lender certainly at some point in time could sell the property. Right. So the issue, I guess, is if this runs with the lender – so, again, we're assuming that it runs with the land. It would apply then to subsequent title holders because it runs with the land. But you're saying it also applies to the lender in present day? Yes, because – well, because the lender bought it at the sale. Right. And you're saying that this provision, though, and that agreement doesn't apply to this at all? It does not, Judge. Okay. I don't think it was ever intended to apply in this situation. Didn't it talk about any obligation of the developer or the anchor tenants that they're not going to – that they, being the lender, is not going to undertake any of the obligations under any of the agreements – the development agreement, the OEA, the purchase agreement? I mean, it was pretty specific. It wasn't going to undertake any of those obligations of those parties. I understood that, but I don't think it applied in this situation. It was never – it was saying that it was not going to agree at any time to voluntarily accept any of those obligations and finish the roads or the sewers or the signs or anything else. It was saying it wouldn't voluntarily do that. But if it's going to buy the property, then I think it's in a different situation. It now owns the property. You can't say that it doesn't have to provide us with plowing the snow, allowing us cross easement access, breaching other agreements in the operation of the easement agreement. It couldn't do those things either. If the property doesn't – if the covenant, the lien, doesn't run with the land, then if a third party had purchased the property at the foreclosure sale, then – I believe it was Carver who said that it didn't run with the land? Yes, sir. Then the purchaser of the sale wouldn't have to pay, or the lien would be extinguished, would it not, for the purchaser? Yes. And that purchaser just happened to be the mortgagee as opposed to a third party. Right, which is why I moved into the trial court and in this court for a stay. I'm still trying to protect my rights because if there's a stay – if there's no stay and they sell it, then also I'm going to be out of luck also. So – Because then you have a bona fide purchaser for value who doesn't have this on the title, basically. That's right, although I think there's some – I know that's what the Supreme Court rules say as far as the appeal if you don't obtain a stay, but the Mortgage Foreclosure Act has this provision that says that if they buy – if there's a third party that comes into title at some point in time after the appeal is filed, but while the appeal is pending, then that buyer is not a good faith purchaser. Is there a notice of what's going on? I'm sorry? Because there's a notice to the buyer? Exactly. Right. And, of course, I filed this pendant's notices which specifically said that this litigation would be appealed and so on. My lien is still a record and the litigation, of course, too. I want to – Since the mortgagee took title, have they paid any of the reimbursement for the special service tax? No, sir. How much has your alleged lien accrued so far since the time they took title? If you know. I don't know. I know what we're fighting – Is that a record? The only thing that would have been a record was – The amount? Yeah, I think it was – we talked about the stay. When we talked about the stay, I think I said at that time how much was due in owing then. But the big picture is I think it's a couple million dollars that we're going to be out if it's not reversed and if it's not corrected. I just want to finish up with one thing. The trial court appeared to, and certainly the bank is, insisting that these don't run with the land. And yet it admits that the taxes were to pay for the improvements to the land. And they also said in their brief that it affects the operation of the shopping center. It certainly does. Target has to pay these taxes. Kohl's has to pay these taxes, too, although they have separate agreements. But I don't think it's any different than the situations in the cases of McNally v. Graves, U.S. Fidelity v. Old Orchard, or CD Realty v. Chicago Northwestern Railroad. And the reason why I pick up those three cases is that they involve the payment of money. I don't think any different than this, where a successor owner or a successor landlord had to pay money. And yet the court still found in those instances that that affects the value of the land. If you have to pay a lease termination fee, that affects the value of the land. If you have to prepay a royalty payment on a mining lease, the courts have said that that affects the value of the land. I think that was the critical mistake, is that the court did not follow the precedent on what covenants run with the land. Thank you, Mr. Wall. You will have time for a bundle argument. Thank you. Mr. Block, you may proceed. Pay it to the court. Counsel, my name is Phil Block. I represent the Appellee Bank of America. As counsel started his speech, he told you this is not an ordinary foreclosure. I concur. It's not an ordinary foreclosure. You agree that much with him, right? I will agree that much. Okay. I happen to think that the two issues before the court, primarily on appeal, are actually simple issues. The first issue being the touching concern issue and the second issue being the subordination issue. And I think that just… Basically, are you conceding then that the parties did intend the covenants to run with the land? I mean, that's not the focus of your argument. I concur. And when I say the parties, that's Home Depot and Cantercourt. Right. That's not necessarily the bank. Not you. We're right. Okay. So the other elements are the ones in dispute. Right. Really. When it comes to the run with the land, it's really just the touching concern, the second of the stream's requirements. And I think that Judge Kargaman was clear in the order, I think it was later Judge McCann signed, that these rights were personal. And because they're personal, the court never really reached the subordination issue, which is the second issue. If this court were to reverse and find that it does run with the land, then I think nevertheless these rights are subordinated. I'm going to start with the touching concern and then I'll get to the subordination issue. You know, maybe I missed something, but in your brief, I mean, you go to great lengths to distinguish the cases that counsel just mentioned and several other ones, but I didn't see any cases that you cited that positively say that a situation like this, payment of money for improvements or, you know, that does not touch a concern in the land. There's not a published case law where it's found in the financial reimbursement situation that they don't, that it doesn't touch a concern in the land. There was actually a 2004 Northern District case by opinion, unpublished by Judge Weinweber, the Marsai Hydropower case, that I think is actually very much on point. I have copies if you'd like to see it. It wasn't published. We didn't cite it in our brief. But I think it's a very similar situation where it was purely a financial covenant. I think counsel just mentioned three cases at the end, the CB Realty, the U.S. Fidelity, and the McKinley v. Graves cases as being very similar, he claims. Those each dealt with the possession of the property. And so that Marsai case that I just mentioned, the opinion by Judge Weinweber, differentiates where there's not actually possession of the property. There's no, I think it's the LaSalle-Westmont case. From this court, it has to concern the occupation and enjoyment of it. CB had two counts. One had to do with the water coming through the railroad. But there's a second and separate count that had to do with the payment of taxes, because they promised to pay three-fourths of the property tax. Sure, and you have to look to the reason they agreed to pay it, because they could operate a railroad bridge over the property. They're paying it for the use and enjoyment of the land. Here we just have an underlying SSA reimbursement, which goes to improve the shopping center, sewers, as counsel just mentioned. And then you have a collateral obligation to reimburse. This is, I mean, a similar situation. So we don't, do we look at the improvements? I mean, the Westville v. Westmont case seemed to talk about improvements, and that they're touching. Well, the underlying obligation in the Westmont case concerned was the hotel, golf course, and then subsequent in time was the office site. And the two parties at the beginning agreed that, you know, we have this easement. Both parties are going to help pay for it, because it's going to benefit both down the road, both that way and down the road. But the office site was never developed. It was the actual payment of the roads and of the sewage and of the lights and signage that benefits the property. It affects the use and enjoyment of both the golf course and hotel and the office down the road. Here it's the underlying SSA tax that Bank of America is paying now, that any successor is going to have to pay. We're looking at a completely collateral obligation here to reimburse. It'd be a situation similar to, you know, a lot of these cases deal with the assessments of a condominium. Bank does not dispute that an assessment touches the concerns of land under the Condominium Property Act. An assessment is to maintain and improve common areas. That's not a quote. What Home Depot is essentially arguing is you have, you know, neighboring owners within a condominium unit, and one agrees to do the other's laundry, and the other one will pay their assessment. Just because it pays the assessment, which goes towards the payment of the, you know, maintenance of the property doesn't mean that it touches or concerns the land. Should a purchaser of, you know, condo unit two have to do unit owner one's laundry? Certainly not. It doesn't affect the use and enjoyment of the land. Well, how do you distinguish this from the holding in McNally that you've alluded to, which the Court basically held that the burden to repay advance royalties run with the land? How does that run with the land? The McNally case dealt with a lease to extract minerals from the property, and they made an advance royalty payment, I think $35,000. And if they abandoned the land, sorry, if they didn't start extracting the resources within 24 months and start paying the owner, then they could terminate the lease and they would have to repay them. Right. $30,000 of the $35,000. Because they didn't extract any resources, they didn't start mining within 24 months, they didn't deplete the value of the land. So clearly it's a lease, their possession, their use of the property. It's extracting the resources from the property. It touches and concerns the land. But how does the payment of royalties itself concern the land? What has that got to do with it? The royalties are paid based off of the resources that are extracted from the land, pursuant to a lease. Yeah. So it touches and concerns the land. It's payments that are made pursuant to a lease in exchange for extracting the land's natural resources. Because it affects the value of the property. Certainly. Why doesn't this affect the value of the property? Here, the SSA might affect the value of the property, but the reimbursement affects Home Depot. If I own Home Depot and I want to sell that store, don't I get a better price for it because of this? Doesn't it affect the value of the property? You get a better price if your neighbor's doing your laundry, too. Everything affects the value at some point. The Marseilles case differentiates. It's a nice analogy, unless, of course, it was dirty laundry. That makes a difference, doesn't it? It does. The fact that somebody is doing your laundry doesn't necessarily mean that the property that you're on can be sold out from under you. But I believe if you don't pay your taxes, there are such things as tax deeds that are used to remedy such situations. So your analogy fails to the extent that if the laundry person were able to levy and execute on the property and actually take it away from you, as opposed to merely having a lien, which might be realized upon the sale of the property, I might buy your argument. Unless you can try and convince me otherwise. If you look at the Enright County Treasurer, which was a second district opinion as well, it's a condo assessment. Generally, condo assessments touch and concern the land as part of a condo declaration to maintain the property. There, this Court held that we can't determine whether this condo assessment touches and concerns the land because it's not clear for what purpose the assessment is being assessed. So you have to look to the purpose of the individual obligation to determine whether it touches and concerns the land. Everything affects the value at some point. Does it affect their ability to use the land? No. In fact, this brings up another interesting point. This right was granted pursuant to a purchase agreement of Home Depot's parcel. And then their lien rights were later granted pursuant to a development agreement of Home Depot's parcel. This has to do with Home Depot's parcel. And counsel was talking about how he thought that the bank's complaint initially sought all this relief and to wipe out all of these rights. One, it was not a footnote. It was very clear we were not trying to wipe out anything under the Operation Easement Agreement. But the important point is we were trying to wipe out their rights in the mortgage property. These agreements, the purchase agreement, the development agreement, concern Home Depot's property. They were not granted any other rights to use or enjoy the bank's property in those two agreements. They were down the road in the OEA. Where are the agreements that were entered into? Does it say that the lien shall be extinguished upon foreclosure? It says it shall be subordinate. And is subordinate different from extinguishment? You were trying to break it down before to look at it. It conveys to a third party. Let's look at another analogy here. You have Mortgage I that's prior in time, subordinates to Mortgage II subsequent in time, and it says that that lien at the time Mortgage II is granted and Mortgage I says my lien, my mortgage is subordinate. It doesn't say the obligations it secures. And Mortgage II forecloses. You're saying what I think it might be called case law. And I don't know of any case law that says that in a situation like this that the, and if I can use an analogy, I agree that the second mortgagee would lose, just as Mr. Wall has indicated, that he would lose any lien that existed prior to you taking title. But once you take title, if there is another second mortgagee who comes down the road, either they're subordinate to someone who's a first mortgagee or they are the first mortgagee. You don't, quote, unquote, extinguish liens for mortgage banks with one foreclosure off Futuro. And citing to condominium law, if a foreclosure occurs on a condominium, Justice Burke wrote a case that, yes, the bank or the lender can extinguish any assessments or liens that the association has, but only up to the point in time where they take title. And then they are subject to those ongoing liens. They aren't extinguished. They're released and discharged as to anything prior to the date of title passing. And thereafter, they're only subordinate if for some reason you have given some priority other than, well, I don't know that they would, as long as you're entitled. So you're arguing something slightly different than what the trial court found, I think, which is you're talking about extinguishment of an ongoing right to have a lien as opposed to extinguishing a lien that is subordinate to your lien. And once your lien is perfected and foreclosed and you become the title owner, just like in a condominium situation, now you're going to have to start paying association assessments. I think the differences are twofold. I recall reading the opinion by Justice Burke. Denver Condominium, I believe. If I don't recall, if I recall correctly, the condo debt was recorded prior to the mortgage. So that differentiates it in one respect. Here, going back to the hypothetical, if a subsequent in time mortgage that takes priority pursuant to subordination sells at foreclosure, the purchaser at foreclosure doesn't take subject to the prior subordinated mortgage and have to make the payments under the obligation that it secures, which is exactly what Home Depot is arguing. There's no support for that. The subordinated second mortgage was based upon consideration given at a prior time. That's extinguished. But if they give more money at some later date or they're entitled to more money at some later date based upon some agreement that runs with the land, like they agreed to do your laundry, then you're telling us that they don't have a right to collect money for doing their laundry or your laundry? I think they have a right to collect from the party who made the obligation, made the promise. Setting aside the laundry example for a moment, getting back to his initial question, does there anything in the agreement that says that Home Depot agreed to define foreclosure all of their rights would be extinguished as opposed to subordinated? I don't see that. Can you call our attention to that? No. Can you answer that question? There's nothing. The own subordination provision is 12.4 of the development agreement. It says their lien shall be subordinate. We're not trying to terminate all of their rights. We're trying to terminate this right for reimbursement against only a subsequent owner of the property. The judgment letter, as Justice McClaren asked before, it does say that their rights against Canabal are not affected. We can chase Canabal for the $34 million. They can chase them for the couple million they're owed. Can you touch on the third element while you're standing up there now? We've talked about the first two. What about the privity issue? You know, I recall looking at the privity at the very onset of the litigation, and I thought that it was clear at that point that approachers at foreclosure generally has privity with the predecessor, and so it really hasn't been an issue in the case. That's really all I can tell you about the privity issue. So finishing up on the touching concern, again, the SSA concerns the development of this overall annoying shopping center. This is a reimbursement obligation. It is not directly the LaSalle v. Westmore case that's directly concerning the property and not collateral to the use and enjoyment. That's precisely what this is. It's a collateral obligation to reimburse. Home Depot gets that bill every year, and they pay it. They used to send a bill to Canabal. They might still be doing it, for all I know. It doesn't affect Home Depot's obligation to pay the assessment to the municipality, and that's what touches and concerns the land. Assuming that this runs with the land, and you go into your secondary argument, just to follow up on what Justice McClaren was talking about, I mean, the reason the lien rights, not any liens, but lien rights, are extinguished entirely because of the foreclosure is what, again? Because something was recorded not in the proper order or something? I mean, it seems to me somebody taking subsequent title, if, in fact, it runs with the land, would take that because that's certainly prior in time. I mean, that agreement is prior in time to the subsequent title being obtained. If it touches and concerns the land. If it touches, I mean, assuming it touches and concerns the land, because your secondary argument is the subordination clause extinguished lien rights. Right. Lien rights, the lien, the reimbursement obligation as against the subsequent owner. It says very clearly in 12.4 that the lien is subordinate to a first mortgage, where first mortgagee, such as the bank, forecloses. Selling the property subject to that obligation would make it not in a senior position whatsoever. If I understand your argument correctly, then, the Bank of America doesn't have to pay any donating letters from Home Depot, but if you sold the property to someone else, would they be responsible for paying it? No. Why is that? Because this right is terminated, the foreclosure does not reset the lien priorities, as counsel's brief says. It terminates subordinate and inferior liens, and that's what happened here. Although the court didn't reach that issue, it ruled on a threshold touch and concern issue, so it didn't get to that point. Thank you. Thank you, Coulson. Mr. Wall? Very briefly, first, Justice Burke, I'd like to try to answer your question about the terminology in the PPA payment and priority agreement that was recorded. The language that the bank is relying upon says, and I quote, lenders shall have no obligation to the city or any of the anchors under any capital D development capital A agreements unless the lender expressly assumes developer's obligations there under in writing. And again, I think that that was only to, so that no one could ever say, well, you're loaning money, we need you to fund the rest of your loan so that you finish the sidewalks and the streets and the traffic lights and things like that. I think it's standard boilerplate language in the development agreement that says, I'm not assuming by anything that I've said, I'm not assuming any other obligation. Also, this is limited to the rights under the development agreements. Our rights arise also out of our recorded purchase agreement, and that, too, was recorded before the mortgage. Lastly, and I'm not at all, I would never be presumptuous, my first job was a law clerk out of law school, but if at some point in time the court were to consider reversing the trial court, then I would ask the court to reconsider my motion for a stay that was filed in the trial court and also renewed in this court, because in the interim, if the shopping center were sold by the bank, then I would have to be dealing with a third party. Thank you. Thank you, Counsel. I'd like to thank both the attorneys for their efforts today and for the briefs. In case there's any take-out of your advisement. And we are adjourned.